# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September 2021 Term**

**FILED**
**November 8, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0488

**JOHN KEENER D/B/A
MOUNTAINEER INSPECTION SERVICES, LLC,**
Petitioner

**V.**

**MATTHEW IRBY,
STATE TAX COMMISSIONER OF WEST VIRGINIA,**
Respondent

_____

Appeal from the Circuit Court of Taylor County
The Honorable Shawn D. Nines, Judge
Civil Action No. 18-P-57

**AFFIRMED, IN PART; REVERSED, IN PART**
_____

Submitted: September 15, 2021
Filed: November 8, 2021

Ronald G. Kramer
Kramer Legal Group, PLLC
Bridgeport, West Virginia
Allison S. McClure
McClure Law PLLC
Clarksburg, West Virginia
Attorneys for Petitioner

Patrick Morrisey
Attorney General
William C. Ballard
Assistant Attorney General
Andrew L. Ellis
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

**Henry R. Glass, III**
**Glass Law Offices**
**South Charleston, West Virginia**
**Attorney for Amicus Curiae,**
**West Virginia Association of Home**
**Inspectors**

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE HUTCHISON and JUSTICE WOOTON concur, in part, and dissent, in part, and reserve the right to file separate opinions.**

**SYLLABUS BY THE COURT**

1.      "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Syllabus point 1, *Appalachian Power Co. v. State Tax Department of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

2.      "Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous."  Syllabus point 4, *Security National Bank & Trust Co. v. First West Virginia Bancorp, Inc.*, 166 W. Va. 775, 277 S.E.2d 613 (1981).

3.      "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

4.      "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."  Syllabus point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

5.　　"A statute that is ambiguous must be construed before it can be applied."  Syllabus point 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

6.　　"Where a person claims an exemption from a law imposing a license or tax, such law is strictly construed against the person claiming the exemption."  Syllabus point 2, *State ex rel. Lambert v. Carman, State Tax Commissioner,* 145 W. Va. 635, 116 S.E.2d 265 (1960).

7.　　"A valid legislative rule is entitled to substantial deference by the reviewing court.  As a properly promulgated legislative rule, the rule can be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious.  W. Va. Code, 29A-4-2 (1982)." Syllabus point 4, in part, *Appalachian Power Co. v. State Tax Department of West Virginia.*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

8.  "A regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W. Va. Code*, 29A-1-2(d) [1982], and such a legislative rule has the force and effect of law." Syllabus point 5, *Smith v. West Virginia Human Rights Commission*, 216 W. Va. 2, 602 S.E.2d 445 (2004).

**Jenkins, Chief Justice:**

Petitioner John Keener d/b/a Mountaineer Inspection Services, LLC ("Mr. Keener") appeals from an order entered June 4, 2020, by the Circuit Court of Taylor County. In that order, the circuit court determined that home inspectors do not meet the professional services tax exemption in West Virginia Code section 11-15-8 (eff. 2008) and that home inspection services are not professional services pursuant to West Virginia Code of State Rules section 110-15-8.1.1.1 (eff. 1993) (sometimes referred to as "Section 110-15-8.1.1.1"). The circuit court also concluded that the four-part test set forth in Section 110-15-8.1.1.1 creates a mandatory four-part test, and not a balancing test as determined by the Office of Tax Appeals ("OTA") and as argued by Mr. Keener.

On appeal, Mr. Keener urges this Court (1) to recognize the services rendered by home inspectors as professional services for purposes of the tax exemption in West Virginia Code section 11-15-8, (2) to conclude that the language of Section 110-15-8.1.1.1 creates a balancing test, not a mandatory, four-part test, and (3) to find that a four-year degree is not required to be deemed a professional. Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we agree with the circuit court's ruling that home inspection services do not qualify as professional services under West Virginia law. We also agree with the circuit court's ruling regarding the four-year degree requirement. However, we find that the circuit court erred in concluding that each part of the four-part test must be met to be

1

classified as a professional.  Accordingly, for the reasons set forth below, we affirm, in part, and reverse, in part, the rulings made by the circuit court.[1]

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mountaineer Inspection Services, LLC ("Mountaineer") is a single-member limited liability company with its principal place of business located in Taylor County, West Virginia.  Mr. Keener, Mountaineer's sole member, is certified by the West Virginia State Fire Marshal to perform home inspection services.  To obtain this certification, he passed a National Home Inspector Examination, completes at least eighty hours of instruction, completed high school, presented proof of general liability insurance, provided fingerprints, presented proof of a valid West Virginia business license, and completes sixteen hours of continuing education each year.  *See generally* W. Va. C.S.R. § 87-5-4 (eff. 2006) and W. Va. C.S.R. § 106-6-4 (eff. 2021).

Between January 1, 2011, and September 30, 2015, Mountaineer, by and through Mr. Keener, failed to collect and remit consumers sales and service taxes to the

---

[1] We wish to acknowledge the appearance of Amicus Curiae for the West Virginia Association of Home Inspectors, and to express our appreciation for its brief in support of the position espoused by Mr. Keener herein.  We have considered its arguments and brief in our decision of this case.

West Virginia Tax Department ("Tax Department").[2] In December of 2015, the Tax Department issued Mr. Keener a notice of assessment stating that he owed $31,137.96 in taxes and $5,048.24 in interest, for a total of $36,186.20. After receiving this notice, Mr. Keener filed a petition for reassessment with the OTA on February 5, 2016. Both parties agreed to waive an evidentiary hearing, and instead, they submitted the case to the OTA by filing briefs. Throughout the proceedings below, Mr. Keener maintained that he was exempt from collecting consumers sales and service tax because he and his home inspection company provided professional services—an exemption detailed in West Virginia Code section 11-15-8.[3]

On October 4, 2018, the OTA issued its Final Decision and affirmed the Tax Department's assessment, concluding that home inspection services are not professional services for purposes of West Virginia Code section 11-15-8. However, the OTA rejected the notion that West Virginia Code of State Rules section 110-15-8.1.1.1 requires a four-year degree for an activity to be considered professional, and further concluded that Section 110-15-8.1.1.1 cannot be characterized as a mandatory four-part test.

---

[2] Since the filing of this case, the Tax Commissioner has changed, and the Commissioner is now Matthew Irby. Accordingly, the Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[3] The text of West Virginia Code section 11-15-8 is quoted in Part III, Section A of this opinion, *infra*.

Both Mr. Keener and the Tax Department appealed the OTA's Final Decision.[4] Upon consideration of the briefs submitted by the parties, the circuit court entered a final order on June 4, 2020, affirming in part and reversing in part the decision of the OTA. The circuit court concluded that home inspection services do not qualify as professional services for purposes of the tax exemption in West Virginia Code section 11-15-8; that the OTA erroneously ruled that a four-year college degree is not a requirement for an activity to be classified as a professional service; and that the OTA erred by ruling that Section 110-15-8.1.1.1 sets forth a balancing test as opposed to a true four-part test. Mr. Keener now appeals the June 4, 2020 decision of the circuit court.

## II.

## STANDARD OF REVIEW

This case is before this Court on appeal from the circuit court's order affirming in part, and reversing in part, a decision of the West Virginia Office of Tax Appeals.

> In an administrative appeal from the decision of the West Virginia Office of Tax Appeals, this Court will review the final order of the circuit court pursuant to the standards of review in the State Administrative Procedures Act set forth in W. Va. Code § 29A-5-4(g) [1988]. Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of

---

[4] Mr. Keener appealed the OTA's decision to the Circuit Court of Taylor County, and the Tax Department appealed the decision to the Circuit Court of Kanawha County. The Tax Department's case was transferred to the Circuit Court of Taylor County and consolidated with Mr. Keener's case.

State tax provisions will be afforded sound consideration, this Court will review questions of law *de novo*.

Syl. pt. 1, *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d 74 (2012). *Accord*

Syl. pt. 1, *Ashland Specialty Co. v. Steager*, 241 W. Va. 1, 818 S.E.2d 827 (2018).

West Virginia Code section 29A-5-4 (eff. 1998) provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
>
> (1) In violation of constitutional or statutory provisions; or
> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedures; or
> (4) Affected by other error of law; or
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Therefore, findings of fact from the OTA will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound consideration, this Court will review questions of law de novo.

Additionally, throughout this opinion, we are tasked with interpreting certain statutes and rules applicable to the issues sub judice. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo*

5

review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995). *Accord* Syl. pt. 1, *In re Tax Assessment Against Am. Bituminous Power Partners, L.P.*, 208 W. Va. 250, 539 S.E.2d 757 (2000). "Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous." Syl. pt. 4, *Security Nat'l Bank & Trust Co. v. First W. Va. Bancorp, Inc.*, 166 W. Va. 775, 277 S.E.2d 613 (1981). Mindful of these principles, we now consider the parties' arguments.

## III.

### DISCUSSION

The issue presented in this matter is whether the services provided by home inspectors are professional services. In the case sub judice, Mr. Keener asserts that the circuit court erred by determining that, as a home inspector, he does not provide professional services for purposes of a tax exemption espoused in West Virginia Code section 11-15-8. In particular, he contends that the circuit court erred in concluding (1) that Section 110-15-8.1.1.1 sets forth a mandatory four-part test for determining whether an occupation is professional, and (2) that a four-year college degree is required for an activity to be considered to provide professional services.

In response, the Tax Department contends that its interpretation of Section 110-15-8.1.1.1 as a mandatory, four-part test that requires a four-year degree is permissible and is the correct and controlling interpretation of the legislative rule at issue,

6

and therefore this Court should affirm the decision of the circuit court determining that home inspection services are not exempt from the consumers sales and service tax.

Because this case requires us to examine the statute governing consumers sales and service tax, we are mindful that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Therefore, where the legislative intent is plainly expressed, we are required to apply rather than interpret the statute at issue. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). Conversely, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992). With these standards in mind, we now proceed to consider the arguments of the parties.

### A. Professional Services

West Virginia imposes a general consumers sales and service tax "for the privilege of selling tangible personal property or custom software and for the privilege of furnishing certain selected services." W. Va. Code § 11-15-3(a) (eff. 2003). If a vendor fails to collect and remit the consumers sales tax, the vendor is personally liable for the tax.

*See* W. Va. Code § 11-15-4a (eff. 2003).  In order to prevent evasion, all sales are presumed

to be taxable until proven otherwise.  *See* W. Va. Code § 11-15-6(b) (eff. 2009).

However, the statute does provide some exemptions; in particular, West

Virginia Code section 11-15-8 provides, in relevant part:

> The provisions of this article apply not only to selling tangible personal property and custom software, but also to the furnishing of all services, *except professional* and personal *services*, and except those services furnished by businesses subject to the control of the public service commission when the service or the manner in which it is delivered is subject to regulation by the public service commission.

(Emphasis added).

Because West Virginia Code sections 11-15-1 to -34, which comprise the

relevant portion of the West Virginia tax code, do not define the term professional

services, we must turn to the duly promulgated legislative regulations pertaining to

consumers sales and service tax.  West Virginia Code of State Rule section 110-15-8.1.1.1

states:

> Professional services, as defined in Section 2 of these regulations, are rendered by physicians, dentists, lawyers, certified public accountants, public accountants, optometrists, architects, professional engineers, registered professional nurses, veterinarians, licensed physical therapists, ophthalmologists, chiropractors, podiatrists, embalmers, osteopathic physicians and surgeons, registered sanitarians, pharmacists, psychiatrists, psychoanalysts, psychologists, landscape architects, registered professional court reporters, licensed social workers, enrolled agents, professional foresters,

8

licensed real estate appraisers and certified real estate appraisers licensed in accordance with W. Va. Code [§] 37-14-1 et seq., nursing home administrators, licensed professional counselors and licensed real estate brokers.

Section 110-15-8.1.1.1 continues, and also lists services that are classified as nonprofessional services:

Persons who provide services classified as nonprofessional for consumers sales and service tax purposes include interior decorators, private detectives/investigators, security guards, bookkeepers, forestors [*sic*], truck driving schools, hearing aid dealers/fitters, contractors, electricians, musicians, and hospital administrators; the foregoing listing is not all-inclusive but intended as containing examples of trades and occupations.

Lastly, Section 110-15-8.1.1.1 grants limited discretion to the Tax Department and concludes by providing a standard for the Tax Department to use when classifying non-listed services as either professional or nonprofessional:

The determination as to whether other activities are "professional" in nature will be determined by the State Tax Division on a case-by-case basis unless the Legislature amends W. Va. Code [§] 11-15-1 et seq. to provide that a specified activity is "professional." When making a determination as to whether other activities fall within the "professional" classification, the Tax Department will consider such things as the level of education required for the activity, the nature and extent of nationally recognized standards for performance, licensing requirements on the State and national level, and the extent of continuing education requirements.

Now that we have established the underlying principles that will guide our resolution of the issues presented in this case, we consider whether home inspection

services are professional services for purposes of the consumers sales tax exemption in West Virginia Code section 11-15-8.

### B. Determination of Whether Home Inspection Services are Professional Services

Mr. Keener first contends that the circuit court erred when it held that the standard set forth at the end of Section 110-15-8.1.1.1 constitutes a mandatory, four-part test where all four factors must be met for an occupation to be considered professional. *See* W. Va. C.S.R. § 110-15-8.1.1.1 ("[T]he Tax Department will consider such things as the level of education required for the activity, the nature and extent of nationally recognized standards for performance, licensing requirements on the State and national level, and the extent of continuing education requirements."). Rather, Mr. Keener contends that the standard is a balancing test and that home inspectors should be classified as professionals because of the stringent requirements imposed upon them. According to Mr. Keener, the work of home inspectors is akin to that of lawyers and other professions listed as professional services in Section 110-15-8.1.1.1. He argues, that in both those professions and in home inspections, clients rely on the individuals' education, experience, and professional judgment in making major life decisions. More specifically, Mr. Keener argues that although home inspectors are not explicitly identified in Section 110-15-8.1.1.1 as an occupation providing professional services, home inspectors should be classified as such because they meet the rigorous considerations set forth in the four-part test of Section 110-15-8.1.1.1.

10

When claiming an exemption from the consumers sales and service tax, taxpayers are under a heavy burden to prove that their services qualify as "professional." This Court has held that "[w]here a person claims an exemption from a law imposing a license or tax, such law is strictly construed against the person claiming the exemption." Syl. pt. 2, *State ex rel. Lambert v. Carman, State Tax Comm'n,* 145 W. Va. 635, 116 S.E.2d 265 (1960). In the case of *Wooddell v. Dailey*, 160 W. Va. 65, 230 S.E.2d 466 (1976), this Court addressed a similar query regarding whether the services of an interior designer could be classified as professional services under West Virginia Code section 11-15-8.[5] In *Wooddell*, we ruled that "any such other profession must be clearly established as professional by the one who asserts that the services rendered by him in connection therewith are 'exempt' or 'excepted' and hence not taxable." 160 W. Va. at 70, 230 S.E.2d at 470. Therefore, because home inspectors are not explicitly listed as providing professional services, Mr. Keener—and other similarly situated individuals—are required to meet a high bar to prove that their services qualify under the professional services tax exemption.

According to Mr. Keener's brief, to become a certified home inspector in West Virginia, individuals

> must (1) pass the National Home Inspector Examination
> offered by the Examination Board of Professional Home

---

[5] *Wooddell v. Dailey* was decided in 1977 under the statutory framework in existence at that time. The corresponding legislative rule was promulgated in 1993. Once promulgated, the legislative rule explicitly identified the services of interior designers as "nonprofessional." *See* W. Va. C.S.R. § 110-15-8.1.1.1.

11

Inspectors or other comparable examination, as determined by the State Fire Marshal; (2) present proof of having conducted business as a home inspector for three (3) years prior to the effective date of the rule or proof of satisfactory completion of at least eighty (80) hours of instruction directly relating to the performance of home inspections; (3) have a high school degree or its equivalent; (4) present proof of and maintain general liability insurance of at least $250,000; and, (5) provide fingerprints for examination by the West Virginia State Police and Federal Bureau of Investigation. W. Va. Code St. R. § 87-5-4.

Pet. Br. at 2.

Because home inspectors are required to meet such stringent requirements, Mr. Keener argues that the circuit court should have balanced the considerations in Section 110-15-8.1.1, rather than require a fulfillment of each factor. Since this was not done, Mr. Keener contends that the circuit court erred when it ruled that the language of West Virginia Code of State Rules section 110-15-8.1.1.1 is a mandatory, four-part test. The legislative rule provides that

> [w]hen making a determination as to whether other activities fall within the "professional" classification, the Tax Department will consider such things as the level of education required for the activity, the nature and extent of nationally recognized standards for performance, licensing requirements on the State and national level, and the extent of continuing education requirements.

W. Va. C.S.R. § 110-15-8.1.1.1. Mr. Keener argues that because the rule does not contain the word *shall*, that it is not a mandatory four-part test, but rather a list of considerations that should be balanced. Therefore, he asks this Court to reverse the circuit court's decision

concluding that the rule is a mandatory, four-part test, where all four factors must be satisfied.

In reading the language of the legislative rule, we find that the circuit court erred in finding that Section 110-15-8.1.1.1 provides a mandatory, four-part test, where each criterion must be satisfied. However, that is not to say that this Court finds Section 110-15-8.1.1.1 to be a mere balancing test. The language of the rule directs that the Tax Department "will consider such things as" the required level of education, the nature and extent of national standards, licensing requirements, and continuing education requirements when analyzing whether an occupation provides professional services. *See* W. Va. C.S.R. § 110-15-8.1.1.1.

The phrase "will consider" indicates a mandatory obligation on the part of the Tax Department to consider the four listed factors, and the phrase "such things as" indicates that the analysis is not limited to the four listed factors. The word *will* creates an obligation to perform. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 941-942 (2d ed., Oxford U. Press 1995). Yet, a mandatory obligation to *consider* is not equivalent to a mandatory "all or nothing" test where all factors must be satisfied. Rather, this Court concludes that the plain language of the rule requires the Tax Department to mandatorily consider the listed criteria *at a minimum*, and not to the exclusion of other factors.

13

Based on these determinations, an individual seeking to be classified as a professional—for purposes of the tax exemption in West Virginia Code section 11-15-8—must not satisfy all four factors set forth in Section 110-15-8.1.1.1, but the Tax Department *must* consider the listed criteria *at a minimum*, and not to the exclusion of additional factors that may arise over time. Therefore, we conclude that the circuit court erred in determining Section 110-15-8.1.1 to be a mandatory, four-part test where all factors must be satisfied.

Mr. Keener next contends that the four-year college degree requirement imposed by the Tax Department and accepted by the circuit court is contrary to the plain language of Section 110-15-8.1.1.1. Mr. Keener asserts that the Legislature has unambiguously announced that the Tax Department must consider the level of education required for an activity before determining whether that activity provides professional services. Absent from this rule, however, is the four-year college degree requirement propounded by the Tax Department. Mr. Keener alleges that even if the rule was ambiguous, the four-year degree requirement is an impermissible exercise of the Tax Department's gap-filling authority because the requirement is arbitrary and directly contrary to the language of the rule. Therefore, Mr. Keener contends that the circuit court erred in finding that a four-year college degree is required before an occupation can be considered a professional service. In support of his argument, Mr. Keener asserts that Section 110-15-8.1.1.1 is unambiguous. We disagree. Pursuant to these provisions, if the services provided by home inspectors are professional services then they are exempted from the general requirement of the collection of consumers sales and service tax; however,

14

West Virginia Code sections 11-15-1 to -34 do not define the term professional services. The absence of such a definition makes it unfeasible for this Court to say that this statute is clear and unambiguous because further statutory construction is required to resolve this obvious ambiguity.

If a statute is silent or ambiguous on a specific issue, and the administrative agency is authorized to promulgate legislative rules—in this case the Tax Department— then the administrative agency has discretion to interpret the statute. *See, e.g.*, Syl. pt. 4, in part, *Appalachian Power Co.*, 195 W. Va. 573, 466 S.E.2d 424 (1995) ("If legislative intent is not clear, a reviewing court may not simply impose its own construction of the statute in reviewing a legislative rule. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."); Syl. pt. 7, in part, *Lincoln County Bd. of Educ. v. Adkins*, 188 W. Va. 430, 424 S.E.2d 775 (1992) ("Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.").

Under West Virginia law, "[a] regulation that is proposed by an agency and approved by the Legislature is a 'legislative rule' as defined by the State Administrative Procedures Act, *W. Va. Code*, 29A-1-2(d) [1982], and such a legislative rule has the force and effect of law." Syl. pt. 5, *Smith v. W. Va. Human Rights Comm'n*, 216 W. Va. 2, 602 S.E.2d 445 (2004). The State Administrative Procedures Act, West Virginia Code section 29A-1-2(d) (eff. 2015), defines a "legislative rule" in the following manner:

15

"Legislative rule" means every rule ... proposed or promulgated by an agency pursuant to this chapter. Legislative rule includes every rule which, when promulgated after or pursuant to authorization of the legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil or criminal liability, or (3) grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting private rights, privileges or interests is a legislative rule.

This Court has held that in reviewing an agency's construction of a statute, we consider two separate questions: whether the Legislature's intent is clear and whether the agency's construction of the statute is permissible. *Appalachian Power*, 195 W. Va. at 583, 466 S.E.2d at 434 (quoting *Sniffin v. Cline*, 193 W. Va. 370, 373-74, 456 S.E.2d 451, 454-55 (1995)). If the Legislature has spoken directly to the precise issue in question, the review ends. *Appalachian Power*, 195 W. Va. at 583, 466 S.E.2d at 434. If the Legislature's intent is unclear, then the court moves to considering whether the construction is permissible. *Id.* Courts should "presume that a legislature says in a statute what it means and means in a statute what it says." *Id.* (quoting M*artin v. Randolph County Bd. of Educ.*, 195 W. Va. 297, 312, 465 S.E.2d 399,414 (1995)). If there is a gap in the Legislature's enactments on a particular issue, then an agency, within their rule-making authority, may fill the gap, but the agency's gap-filling rulemaking should not stand if it is arbitrary, capricious, or manifestly contrary to the statute. *Appalachian Power*, 195 W. Va. at 589, 466 S.E.2d at 440.

16

As stated above, West Virginia Code sections 11-15-1 to -34 do not define the term professional services. Therefore, we must turn to West Virginia Code of State Rules section 110-15-8.1.1.1. Here, the legislative rule at issue expressly designates thirty-seven services as professional services, which are, thus, exempted from the consumers sales and service tax. Home inspection services are not enumerated in the list of professional services. Likewise, home inspection services also are not listed in the specified nonprofessional services. It would be inconceivable, and even absurd, to expect the Legislature to classify every single occupation as either professional or nonprofessional. Therefore, while the Legislature is free to designate any service as professional or nonprofessional regardless of the educational requirement, the Tax Department does not have the same unfettered discretion. Rather, the Legislature delegates limited authority[6] to the Tax Department to classify additional professional services on a "case-by-case basis" in accordance with the criteria expressly authorized by the Legislature in Section 110-15-8.1.1.1. When classifying non-listed services as either professional or nonprofessional, the four-part test detailed in Section 110-15-8.1.1.1 is used: the level of education, the nature and extent of nationally recognized standards, the licensing requirements, and the continuing education requirements. *See* W. Va. C.S.R. § 110-15-8.1.1.1.

---

[6] We recognize that an agency's authority to fill "gaps" in legislative enactments is subject to the provisions of W. Va. Code § 29A-3-2 (eff. 1982).

17

The four-year degree rule contested by Mr. Keener is not a new or random requirement. Although the legislative rule is silent as to the level of education required, the Tax Department has long taken the position that a high school diploma or a GED is not sufficient to fulfill the educational requirements under Section 110-15-8.1.1.1, and that a relevant four-year degree from an accredited college or university is required. *See, e.g.*, W. Va. Tax Dec. 2006-340C, 2007 WL 9617856, *1 (W. Va. Off. Tax App. Mar. 27, 2007) (concluding that having a four-year degree is a requirement and that a degree germane to the activity at issue is one that tends to divide professions from trade or skilled occupations).

It has been argued that because some of the professional services listed in Section 110-15-8.1.1.1 do not require any more education than a high school diploma, that a four-year degree cannot be deemed a necessary requirement to qualify for the professional services tax exemption. For example, real estate brokers (W. Va. Code § 30-40-14 (eff. 2002)), real estate appraisers (W. Va. C.S.R. §190-2-1 (eff. 2020)), and embalmers (W. Va. C.S.R. § 6-1-3.1.2.a (eff. 2021)) are all listed in Section 110-15-8.1.1.1 as providing professional services; however, those occupations do not require a college degree. We are not persuaded by this argument.

Here, Section 110-15-8.1.1.1 gives the Tax Department the authority to determine whether additional non-specified occupations fall within the scope of professional services. Of particular importance here is the level of education required for

18

an occupation to be considered "professional."  As evident from the language of the rule, it is clear that the Legislature did not specify how much education is required—this question was left open.

Although this Court has not addressed this issue before, the OTA has spoken on this issue in previous tax appeals.  More specifically, the OTA has stated:

> The requirement that in order to qualify as a profession an occupation must satisfy the educational requirement of a four-year college degree is one that was established by the State Tax Commissioner's Office of Hearings and Appeals.[7] This tribunal, the West Virginia Office of Tax Appeals, is independent of the State Tax Commissioner.  Decisions issued by the Tax Commissioner's Office of Hearings and Appeals are not precedents that are binding on this Office.  However, this Office has chosen to continue to adhere to this educational requirement because it is one that is reasonable in light of the purposes and goals that the Legislature attempted to achieve in enacting the statute and approving the legislative rule.  A minimum requirement of a four-year degree that is germane to the activity (plus the other requirements of the legislative rule) is one that tends to divide professions from mere trades or skilled occupations.

> This Office recognizes that this requirement of a four-year college degree is, in a very technical sense, "arbitrary." As the Circuit Court of Kanawha County held in *Wideman & Associates, Inc. v. Paige*, Civil Action No. 93-C-5726 (Cir. Ct. Kan. Co. 06/27/95), the legislative rule, on its face, is devoid of any fixed number of respectively weighted standards that

---

[7] "[L]egislative changes resulted in the creation of a successor tribunal to the Tax Commissioner's Office of Hearings and Appeals:  the Office of Tax Appeals." *Concept Min., Inc. v. Helton*, 217 W. Va. 298, 300, 617 S.E.2d 845, 847 (2005).  The Office of Tax Appeals began operations on January 1, 2003.

19

can be used for guidance by taxpayers, the Tax Commissioner, the courts and, logically, this Office as the specialized state tax tribunal. In light of the lack of guidance provided by the legislative rule, any standard applied will, of necessity, be arbitrary, whether it be a rule applied to all occupations, as this Office is doing, or whether it establishes some rule respecting the education required (or one of the other standards) for an occupation on a case-by-case basis. The only thing that this Office, a specialized state tax tribunal, and the courts can hope to do when creating some necessarily arbitrary rule is to avoid being capricious at the same time. This Office's goal in establishing the requirement that an occupation must require a four-year college degree in order to be considered a profession is to establish a clear, bright line rule that can readily be understood and applied, in advance, by all taxpayers, the State Tax Commissioner and this Office.

W. Va. Tax Dec. 2006-340C, 2007 WL 9617856, at *12 (W. Va. Off. Tax App. Mar. 27, 2007) (footnote added).

We are guided and persuaded by the sound reasoning of the OTA as set forth in the preceding excerpt. In the case sub judice, a gap existed in the education requirement for determining whether a particular occupation provides a professional service, and the Tax Department properly used its discretion to clarify the ambiguity. Based upon established precedent, the Tax Department interpreted the education requirement in the rule as requiring a four-year college degree for a service to be classified as a professional service. In doing so, the Tax Department did not act randomly or beyond its authority. Rather, the Tax Department used the four-year degree to provide a bright line rule that can be easily followed and applied in future cases. Accordingly, we conclude that the Tax Department acted within the discretion afforded to it by the Legislature, and the circuit

20

court did not err when finding that the four-year degree requirement was a permissible exercise of the Tax Department's rule-making authority.

While this Court has never directly addressed whether home inspectors provide professional services, this issue has been previously answered by the Tax Department in its administrative decisions. *See, e.g.*, W. Va. Tax Dec. 2003-418C & 2003-487RC, 2004 WL 1416147, at *5 (W. Va. Off. Tax App. Mar. 29, 2004) ("The 'professional services' exception from services in general subject to the consumers' sales and service tax, see W. Va. Code §§ 11-15-8 [1955] and 11-15-2(s) [1994, 1998, 2001], does not apply to the services of a home inspector, where, as here, such an inspector fails to prove that his or her services comport with the mandatory four-part test of the legislative regulation set forth in 110 C.S.R. 15, § 8.1.1.1 (effective on or after May 1, 1992), and in fact fails to prove that home inspection services satisfy any of the four requirements."); W. Va. Tax Dec. 96-098CS, 1998 WL 1048430, at *3 (W. Va. Off. Hrg. App. Sept. 21, 1998) ("Based upon the review of the criteria, the Petitioner has failed to meet the burden of proof required to clearly establish that home inspection service is a professional service. Thus, the Petitioner's services rendered in his capacity as a home inspector are not exempt from consumers sales and service tax as professional service.").

While it should be noted that these decisions were issued prior to the certification requirements set forth by the State Fire Marshal in West Virginia Code of State Rules section 87-5-4, it remains that the since-promulgated requirements only impose

minimal educational requirements. *See* W. Va. C.S.R. § 87-5-4.2. Under the State Fire Marshal's promulgated rule, a home inspector must have "[s]successfully completed high school or its equivalent." *Id.* As noted by the circuit court in its order, when asked "to classify a service that is not specifically designated as a professional service in the legislative rule, the Tax Department has long taken the position that a high school diploma or a GED is not enough to qualify as providing a professional service." The circuit court further stated that "[t]o be classified as providing a professional service, the minimum education required to provide that service must be a four-year college degree or its equivalent."

After careful review of the pertinent law, we conclude that the circuit court did not err in finding that home inspectors are not professionals under West Virginia Code of State Rules section 110-15-8.1.1.1, and also did not err in upholding the four-year degree requirement, as we find it was a permissible exercise of the Tax Department's rule-making authority. Accordingly, we conclude that home inspectors do not provide professional services for purposes of the professional services tax exemption in West Virginia Code section 11-15-8. However, we find that the circuit court did err in finding that Section 110-15-8.1.1.1 created a mandatory four-part test where each factor must be satisfied.

## IV.

## CONCLUSION

For the reasons set forth above, we affirm, in part, and reverse, in part, the circuit court's order.

Affirmed, in part; Reversed, in part.